[No. 492.    August 21, 1891.]

# BOARD OF EDUCATION OF EAST LAS VEGAS ET AL., APPELLEES, v. JESUS L. TAFOYA, TREASURER OF SAN MIGUEL COUNTY, APPELLANT.

SCHOOL FUNDS—MANDAMUS TO COMPEL DISTRIBUTION—CONSTRUCTION OF STATUTES.—In a proceeding by mandamus, by the board of education of East Las Vegas, to compel the treasurer of San Miguel county to place to the credit of said board all moneys in his hands, and that might be received by him, derived from licenses for the sale of intoxicating liquors within said town, and to pay said moneys, when collected, to the treasurer of said board, where the question was whether said funds belonged to the general school fund, to be apportioned and distributed to all of the school districts of said county, or whether such funds were to be placed to the credit of and paid to the school district of said town, the appellees relying upon section 35, chapter 25, Acts, 1891, which was enacted and became a law February 12, 1891, and the appellant upon section 3, chapter 9, Acts, 1891, enacted February 2, 1891, but which did not take effect until May 1, 1891—Held: The former act, having been enacted subsequently to the latter act, must prevail as the latest expression of the legislature. The latter act having made no provision for the distribution of the fund, the presumption is the legislature then had in mind the passage of the former act, which provides that the license money shall be placed to the credit of the several school districts, and not to the general school fund of the county.

2. Chapter 77, which is amendatory of chapter 25, section 1, provides that the three mill tax shall be paid direct to the county treasurer instead of the territorial treasurer, as provided in chapter 25; and section 9 of chapter 77 provides for boards of education in incorporated cities and towns. The appellees are within the provisions of this act, and therefore entitled to the relief sought herein.

APPEAL, from a judgment for plaintiffs, from the Fourth Judicial District Court, San Miguel County. Judgment affirmed.

The facts are stated in the opinion of the court.

E. L. BARTLETT, solicitor general, for appellant.

E. V. LONG for appellees.

McFIE, J.—This is a proceeding by mandamus, wherein the board of education of the town of East Las Vegas seeks to compel the treasurer of the county of San Miguel to place to the account or credit of said board all moneys now in his hands, or which may hereafter be received by him, derived from license for the sale of intoxicating liquors within said town, and that said moneys be paid, when collected, to Daniel Hoskins, treasurer of said board. Alternative writ having issued, all formalities were waived, and upon the hearing of the court below a peremptory writ was awarded, in accordance with the prayer of the petition. To reverse the judgment of the court below the cause was brought to this court by appeal. The sole question submitted to this court is whether the money derived from liquor licenses collected in the school district of East Las Vegas belonged to the general school fund, to be apportioned and distributed to all of the school districts of the county of San Miguel, as provided in section 13, chapter 25, Laws, 1891, as contended by the appellant, or whether such funds are upon their receipt to be placed to the credit of and paid to the school district of East Las Vegas, as provided in section 35, chapter 25, Laws, 1891. The appellant relies upon section 3, chapter 9, of the Laws of 1891, which is as follows: "Sec. 3. Every license herein provided for shall be issued for the period of twelve months by the clerk of the board of county commissioners, upon order of such board, or by the city or town clerk or recorder, upon order of the mayor, city, or town council or board of trustees, as the case may be, and shall by such clerk or recorder be turned over to the applicant for said license upon the payment of said license fee by said applicant into the hands of the county treasurer, to be covered

into the general school fund of the county; provided, that any officer who shall deliver to the applicant any such license until the tax thereon has been paid as herein provided shall forfeit to the said school fund double the amount of said license, to be recovered upon the official bond of said officer.'' The last clause of this section, it is insisted, provides that the license fund shall be paid to the county treasurer, to be covered into the general school fund of the county. Without examining into the merits of this contention for the present, we will first inquire as to the intention of the legislature in enacting chapter 9. It will be observed that chapter 9 is entitled, ''An act licensing the sale of intoxicating liquors and regulating the same.'' The entire chapter is devoted to the subject of license, having no reference by title to school purposes. It provides a graduated system of license, ranging in amounts from $100 to $400, and erects the legal machinery necessary to carry the system into successful operation. The legislative mind was therefore, at the time of the passage of what is known as the ''High License Law,'' absorbed in the perfection of the law licensing and regulating the sale of intoxicating liquors, aside from all other subjects. Section 3 is the only section of the entire act that refers to schools or school funds, and that section is couched in very general terms. In adopting the license system, a large fund would necessarily be derived from it, which fund must be devoted to some proper purpose, and must have a custodian. The legislature determines that this fund shall be devoted to school purposes, and, while the language used is that it is to be covered into the general school fund of the county, it still remains apparent that this language is used in a general sense, and substantially says that the license fund shall be devoted to school purposes. But a single section is used for this purpose, and that section is one

of accumulation and not of distribution. Under this section the license fund is placed in the hands of the county treasurer of the respective counties, without any provision whatever for its disbursement, and from this fact, and the further fact, of which we take judicial knowledge, that a few days later the same legislature passed an act for the disbursement of school funds, we have a right to presume that the legislature had in mind the subsequent act of distribution, and therefore remitted the whole subject of the distribution of the license and other school funds to the further action of the legislature.

This view we find fully sustained by an examination of chapter 25, Laws, 1891. Passing to the consideration of chapter 25, Laws, 1891, we find the appellees relying upon section 35 of that chapter. It is undoubted that the legislature intended, by enactment of chapter 25 of the Laws of 1891, to provide a comprehensive public school system for the territory, and to do this it was necessary to provide details for the successful operation of the system. It was necessary to provide for the necessary officers, for the necessary funds, and for the distribution of all available funds for the support of the system. An examination of chapter 25 discloses that all of these subjects were elaborated in a minute, intelligent, and creditable manner. The matter of provision for funds and of the distribution of them being alone before us in this case, we have examined these provisions with some care. Section 4 provides that the territorial board of education shall apportion the territorial school funds to the various counties, according to the number of children over five and under twenty-one years residing in the respective counties, and that the territorial treasurer shall draw his warrant in favor of the respective county treasurers for that amount appropriated to each county. This provision clearly refers to the territorial three

mill tax for school purposes, provided by law. After
the fund passes to the county treasurer, section 13 pro-
vides for its apportionment to the different school
districts of the county according to the number of
children of school age in their respective districts.
This fund, therefore, must be apportioned to all organ-
ized school districts in the county. Some importance
is sought to be attached in the argument of the appel-
lant to the words, " together with all the county school
fund for the same purpose." Counsel for appellees
contends that the poll tax provided for in section 36 is
referred to, while counsel for appellant suggests that
the license fund is meant. As to whether the poll tax
constitutes that fund, or whether there is or is not any
such fund in the county treasury, we are not called
upon to decide in this proceeding; but we are satisfied
that the license fund was not contemplated by that
section of the act, nor was it intended to dispose of
the license fund in that unrestricted manner. The
license fund is clearly within the provisions of section
35, chapter 25, Laws, 1891, and is as follows: " Sec.
35. That the following are hereby declared to be and
remain temporary funds for common school purposes:
First. The proceeds of all sales of intestates' estates
which escheat to the territory. Second. All forfeitures
or recoveries on bonds of county, precinct, or territorial
school officers. Third. The proceeds of all fines col-
lected for violations of the penal laws. Fourth. The
proceeds of the sales of lost goods or estrays. Fifth.
All moneys arising from licenses imposed upon whole-
sale and retail liquor dealers, distilleries, breweries,
wine presses, gambling tables, or games of chance,
which now pay license, or may hereafter be required to
pay license. All the moneys arising from the above
enumerated sources, when collected, shall be paid into
the county treasury to the account of the several school
districts wherein such sums are collected, officers col-

lecting and paying in the same taking the county treasurer's receipt therefor. Should there be more than one school district in any precinct, said amount collected shall be divided among the several school districts pro rata, according to the scholastic census of said district as furnished to the county school superintendent for the current year." This section refers specifically to license fund, directs the manner of its distribution, and to whom it shall be credited. There was no provision for the distribution of this fund in the act creating it; therefore there can be no conflict between that act and section 35, which provides for a distribution of the fund. It is very evident that the legislature, in drafting section 35, had in mind the former act, because it refers to the specific fund thereby created, adopts the provision that the county treasurer shall be the custodian, and then specifically directs that the treasurer shall place the funds to the credit of the school districts from which the money is collected. While the phraseology of that part of the section is not the best that could have been used, still that is obviously the meaning of the language. Appellee insists that the word "account" in the latter part of section 35 is used in a special sense, and is not equivalent to the word "credit;" that the language of that section means simply that an account shall be taken of the money received from school districts; but we can not agree to that construction. It is refined, but not persuasive. The language, "shall be paid into the county treasury to the account of the several school districts wherein such sums are collected," clearly indicates that the legislature intended that the funds arising from licenses, fines, and other sources referred to in section 35, should inure to the benefit of schools in the districts wherein or by which the money is paid into the county treasury; that such money shall be placed to the account or credit of such district as soon

as paid into the county treasury, and thereby become available only to the district from which the money was received; that the word "account" as used by the legislature is equivalent to the word "credit." We find additional evidence in section 42. In that section fines are provided for, and as to the money collected from those fines section 42 says: "All fines so collected shall be paid into the county treasury, and placed to the credit of the school district in which the offense occurs." Section 35, in referring to fines as well as licenses, uses the same language as section 42, except the word "account" is used instead of the word "credit." It could not have been the intention of the legislature to place fines collected under section 42 to the credit of the district from which they come, and do otherwise with the fines collected under section 35. Further, we see no reason for taking an account of funds derived from licenses collected in the different school districts, unless it be for the purpose of giving such districts the benefit of such funds, and we can not believe that the legislature required a meaningless thing to be done.

It is further contended by the counsel for appellant that although chapter 9 was enacted prior to chapter 25, it did not take effect until May 1, 1891, while chapter 25 became a law February 12, 1891. There is no conflict between these acts, and both may remain in full force and effect. If, however, there was a conflict between section 3, chapter 9, and section 35, chapter 25, section 3 would be repealed to the extent of the conflict—First, because it is general, whereas section 35 is specific; and, second, because section 35 is the latest expression of the legislative will upon the subject. Counsel for appellant cite authorities to the effect that where a law is passed to take effect in futuro it became operative upon the day when it takes effect. Such is the law, but it is not the law applicable to this

case. In case the last act passed by the legislature upon a given subject takes effect in the future, while a former act upon the same subject takes effect upon its passage, the provisions for the former act will prevail until the taking effect of the last act, because the latter act is the latest expression of the legislature; but if the former act takes effect last it will not prevail over a later expression of the legislative will. The reason is obvious. The last expression of the legislative will must prevail. If a mistake has been made in a former act, even during the same session, they have the power, and it is the duty, of the legislature to correct it. If for any reason the legislature desire to change a former law, they have the power to do so by a subsequent act; but, if the contention of the appellant is sustained, the last expression of the legislative will would be defeated by a former expression, which would be contrary both to reason and the law. The high license law did not take effect until May 1, 1891, while the public school law took effect upon its passage and approval, February 12, 1891. Appellant admits that the high license law was passed by the legislature February 2, 1891, ten days prior to the passage of the school law, but contends that, as it did not take effect until May 1, it became after that date the latter and controlling law. We can not give our assent to this view, as in effect it would prevent a legislature from correcting its errors or mistakes, and all that would be necessary to prevent a legislature from correcting vicious legislation would be to secure the postponement of the taking effect of the obnoxious act until after the adjournment of the session of the legislature. It is very evident that the legislature, in providing that the high license law should take effect May 1, was simply to fix a time when the new license system should commence, and give a reasonable time for preparation for compliance with its terms. Chapter 77, Laws, 1891, is amendatory

of chapter 25, section 1, and provides that the three mill tax shall be paid direct to the county treasury, instead of to the territorial treasurer, as provided in chapter 25. Section 9, chapter 77, provides for boards of education in incorporated cities and towns. The appellees are within the provisions of this act, and entitled to the relief sought in this proceeding. The court below properly granted the peremptory writ of mandamus, and the judgment of the court below is affirmed.

LEE, FREEMAN, and SEEDS, JJ., concur.